UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 05-10016-RCL |
| **MICHAEL MCDONALD** | ) ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS FRUITS OF ILLEGAL ARREST

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, and hereby move this Honorable Court to deny defendant's Motion to Suppress the Fruits of an Illegal Arrest. The defendant contends that his arrest was illegal because law enforcement did not have probable cause to make the arrest. The United States asserts that the facts of this case provided Immigration and Customs Enforcement ("ICE") agents with probable cause to arrest the defendant on the morning of November 24, 2004. As probable cause existed, the defendant's arrest was valid and the Motion to Suppress must be denied.

### FACTS

On November 23, 2004, Donovan Sorrell, a Jamaican national, entered the United States on Jamaican Airlines flight 49. Flight 49 arrived at Logan International Airport at approximately 10:30 p.m. and Customs and Border Protection ("CBP") agents subsequently conducted intensive inspections on the majority of

passengers.  An x-ray of Sorrell's luggage revealed three bottles, two of which appeared to contain solid objects.  Sorrell was brought to a table where he identified the luggage as his property.  The two bottles were removed from Sorrell's bag and a second x-ray confirmed the existence of solid objects inside of the bottles. The two bottles were then taken to a separate area where a sample of each solid object was extracted from the bottles.  Field tests on the contents in each bottle revealed the presence of cocaine.

Sorrell was then advised of his <u>Miranda</u> warnings and agreed to cooperate with law enforcement.  He stated that on two occasions in September and October 2004 he brought cocaine from Jamaica to Boston inside bottles of rum.  Sorrell stated that he transported the cocaine for "Winston", who he knows through a man in Jamaica named "Bones."  Sorrell expected to be paid between $4000-$5000 for each trip.  He stated that on the previous two trips he had been instructed that after arriving in Boston to rent a room at the Best Western Hotel in Quincy, Massachusetts, and then to call "Bones" in Jamaica with his hotel room number. Sorrell had been informed that a man named "Cox" would pick up the cocaine at the Best Western.  On both prior trips, a tall black male, with a facial scar came to Sorrell's room to pick up the cocaine and pay Sorrell for transporting the drugs.

On November 24, 2004,, a controlled delivery of the cocaine recovered from Sorrell's luggage was conducted at the Best

Western Hotel in Quincy. Sorrell agreed to go to the Best Western with federal agents and contact "Bones." With federal agents present, Sorrell called "Bones" and informed him that he was in room 109.

At approximately 9:30 a.m., a male matching Cox's (a.k.a. "Neural Carr") description[1] and the defendant arrived at the Best Western in a 2000 Nissan Pathfinder driven by the defendant. (A license plate check showed that the car was registered to the defendant.) The defendant then parked the vehicle and Carr exited and walked to room 109. The defendant remained in his vehicle while Carr entered room 109 and spoke with Sorrell. After a short time, Carr exited the room carrying the two bottles containing the cocaine, and began walking toward the defendant, who had remained waiting for Carr in his vehicle.

At this point, Carr and the defendant were arrested by federal agents. After the defendant was taken into custody, law enforcement agents searched his Nissan Pathfinder. An inventory of the vehicle resulted in the seizure of several packets of cocaine by the Massachusetts State Police.

### LAW ENFORCEMENT INTERVIEW OF THE DEFENDANT

After his arrest, the defendant was read his <u>Miranda</u> warnings by SA John Coleman. Subsequently, the defendant waived his rights and agreed to be questioned by SAs John Coleman and

---

[1] "Cox" was later identified as Neural Carr by law enforcement. Neural Carr will be referred to as "Carr" for the remained of the memorandum.

Kristin Rosenback.  In response to questioning, the defendant stated that at approximately 8:00 a.m. that morning (November 24, 2004), he received a phone call from his friend Carr, who stated that he needed a ride to go pick up some rum.  The defendant claimed that he had never given Carr a ride before, and that Carr had never been in his vehicle before.

During the course of the interrogation, federal agents brought Carr out of the Best Western.  Upon seeing Carr, the defendant stated, "What did he get caught with?"  Prior to this exclamation the investigating agents had not informed the defendant that any substance had been seized.

The defendant subsequently admitted that Carr told him he was picking up rum, but the defendant knew it was something else.  The defendant then changed his story and said that the statement about picking up rum was "bullshit."  The defendant admitted that he knows Carr is a drug dealer, and has himself bought drugs from Carr in the past.

A short time later, law enforcement agents informed the defendant that they had found several glassine bags of cocaine in his vehicle.  The defendant then admitted that Carr had told him to bring him to the hotel to pick up some "stuff."  The defendant stated that he knew this to mean cocaine and told law enforcement that "usually when we pick up, I buy off [Carr]."  Subsequently, the defendant explained that he makes a living selling cocaine and makes approximately $1000 a week.  The defendant indicated

that he had agreed to drive Carr on November 24, because he was hoping to buy some cocaine from of Carr.

The defendant was then taken to a nearby MBTA Police Station for processing.

### ARGUMENT

<u>PROBABLE CAUSE EXISTED TO ARREST THE DEFENDANT</u>

In the present case, the defendant was arrested without a warrant by law enforcement officers. An arrest without a warrant need only be supported by probable cause. <u>United States v. Watson</u>, 423 U.S. 411, 417 (1976). The defendant argues in the memorandum in support of the Motion to Suppress that law enforcement did not have probable cause to arrest him. The defendant supports this contention with two separate arguments. First, the defendant references "the lack of concern exhibited by [the defendant]" while parked in his car. Additionally, the defendant points to the fact that Donovan Sorrell did not mention the defendant's name in the course of his cooperation with law enforcement.

The Government contends that this is clearly an instance where the facts and circumstances provided sufficient probable cause for law enforcement to make a lawful arrest. In order to establish probable cause, "the Government need not present the quantum of proof necessary to convict." <u>United States v. Torres-Moldonado</u>, 14 F.3d 95, 105 (1st Cir. 1994). Rather, probable cause exists when "police officers, relying on reasonably

trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Young, 105 F.3d 1, 6 (1st cir. 1997). Probable cause is described as a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996).

In the present case, law enforcement agents made a reasonable, lawful arrest, based on the totality of circumstances available to them on November 24, 2004. Briefly, law enforcement was informed by Sorrell that on his two prior drug-running trips to Boston he would phone a man named "Bones". After Sorrell spoke to "Bones" a man named "Cox" would come to his hotel room and pick up the cocaine hidden in the bottles. On November 24, 2004, Sorrell called "Bones" and within hours the defendant arrived at the hotel with Carr as a passenger in his vehicle. Law enforcement then witnessed Carr exit the defendant's vehicle and enter Sorrell's hotel room. While Carr was in the Sorrell's room, the defendant remained in his vehicle in the hotel parking lot to provide Carr with transportation. After conferring briefly with Sorrell, Carr then left the hotel room with the two bottles containing cocaine. Both Cox and the defendant were then arrested as Cox made his way back towards the defendant's vehicle. These facts clearly provided law enforcement agents

with information upon which a reasonably prudent person would determine that the defendant was in the process of aiding Carr in the possession of cocaine.

Again, the defendant essentially argues two theories with regards to probable cause in his memorandum support of the motion to suppress. First, the memorandum suggests that as Sorrell did not mention the defendant by name, probable cause did not exist. In support of this notion, the defendant cites <u>United States v. Di Re</u>, 332 U.S. 581 (1958). In <u>Di Re</u>, a government informant named Reed had provided information to law enforcement about a deal involving counterfeit gasoline rations that he was soon to take part in with a man named Buttitta. Some time after the deal took place, law enforcement pulled over a car containing Reed, Buttitta, and the defendant, Di Re. Di Re was subsequently arrested as a member of the counterfeit ration conspiracy. In finding that law enforcement did not have probable cause to arrest Di Re, the Court found persuasive the fact that the informant had been present with both Di Re and Buttitta and had only pointed out Buttitta as a part of the deal.

The present case is easily distinguishable from the facts of <u>Di Re</u>. In <u>De Ri</u> the informant had been in the presence of both Buttitta and Di Re, and yet only pointed out Buttitta as a participant in the deal. However, in the present case, Sorrell had never met the defendant at the time of the deal. True, Sorrell did not name the defendant as a prior participant in

cocaine deals, but that is only because Sorrell had only dealt directly with Carr when smuggling narcotics into Boston.  Sorrell would have had no reason to know the defendant's role.  Common sense dictates that if the defendant's role was to aid Carr by transporting him to and from the hotel to pick up the cocaine, Sorrell would have had no reason to know the defendant.  As such, the fact that Sorrell did not directly implicate the defendant is meaningless in the determination of the existence of probable cause.

Additionally, the defendant contends that his actions on November 24, 2004, did not provide law enforcement with probable cause to make an arrest.  The defendant suggests that he only provided transportation for Carr and that "given the lack of concern exhibited by [the defendant]" law enforcement did not have probable cause to arrest him.  The defendant cites United States v. Chadwick, 532 F.2d 773, 784 (1st Cir. 1976) in support of his argument.  In Chadwick, the DEA was informed that a footlocker on an Amtrak train in the possession of two persons, Machado and Leary, was suspected of containing a large quantity of narcotics.  Subsequently, when the train pulled in to South Station, Chadwick arrived in a rental car and assisted Leary and Machado in loading the footlocker into the car.  Chadwick was then arrested by DEA agents before pulling away.  In holding that the arrest was illegal, the Court stated that while Chadwick's behavior was suspicious, it fell short of probable cause.  The

court found that as Chadwick had no prior connection with Machado or Leary, and had just shown up and helped move the footlocker, he may not have had knowledge of locker's contents.  <u>Id.</u> at 784.

The facts of the present case are substantially different from <u>Chadwick</u>.  In <u>Chadwick</u>, the defendant arrived only after the narcotics had been in Machado and Leary's possession.  In the present case, the defendant drove Carr to his rendevous with Sorrell and then stood by to provide transportation to Carr after he had picked up the cocaine.  Presumably, if Chadwick had been present with Leary and Machado on the Amtrak train prior to his arrest, law enforcement would have had probable cause to effectuate his arrest.  In the present situation, the defendant was present before, during, and would presumably have been present after Carr had taken possession of the cocaine if not for his arrest.  Moreover, while it is common to pick someone up from a crowded train station, as in <u>Chadwick</u>, the facts in the present case are far more suspicious.  Specifically, it is far less common, the Government suggests, to provide transportation to and from a cocaine deal in a hotel room.  Clearly, this is a case in which the defendant's actions provided law enforcement with probable cause to effectuate his arrest.

Finally, the defendant argues that his proximity to Carr alone does not provide law enforcement with the requisite probable cause to effectuate his arrest.  However, this argument fails when the actions of the defendant reviewed.  Contrary to

the assertions of the defendant's memorandum, the defendant did not just happen to be in close proximity, or "propinquity," to the defendant. Rather, the defendant took an active role in Carr's criminal possession of cocaine. Specifically, the defendant agreed to drive Carr to and from the deal in the hope that he, the defendant, would be able to purchase some cocaine from Carr after the deal with Sorrell had been completed.

As the First Circuit has held with regards to cases dealing with association, "the cases in which courts find that probable cause exists generally involve substantially more than a momentary, random, or apparently innocent association between the defendant and the known criminal activity." United States V. Martinez-Molina, 64 F.3d 719,729(1st Cir. 1995). In the present case, the facts clearly show that the defendant's relationship with Carr was neither random or momentary. The defendant drove Carr to the cocaine deal, and waited in the parking lot for him to complete the deal. As the First Circuit has explained,

> "evidence must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.[quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)] We do not think officers in the field are required to divorce themselves from reality or ignore the fact that criminals rarely welcome innocent persons as witnesses ... or seek to perpetuate felonies before larger than necessary audiences."

United States V. Martinez-Molina, 64 F.3d 719,729 (1st Cir. 1995).

In the present case, law enforcement agents made a

reasonable determination based both on the evidence available to them and on their experience in the field of law enforcement, that the defendant's actions were sufficient show his involvement in the cocaine transaction. In light of the relevant case law, the Government argues that the defendant's arrest was clearly supported by probable cause. As the arrest was valid, the defendant's Motion to Suppress the Fruits of an Illegal Arrest must fail.

## CONCLUSION

The United States requests that the Court deny the defendant's Motion to the Suppress the Fruits of an Illegal Arrest and requests an evidentiary hearing.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

           By:        */s/ David G. Tobin*
                              DAVID G. TOBIN
                              Assistant U.S. Attorney

Dated: August 22, 2005