UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 05-10016 |
| | ) |
| MICHAEL MCDONALD | ) |
| | ) |

<u>GOVERNMENT'S MOTION TO RECONSIDER ALLOWANCE OF SUPPRESSION MOTION</u>

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, and hereby moves this Honorable Court to reconsider its allowance of the defendant's Motion To Suppress. In support of this Motion To Reconsider, the government avers the following:

1) On July 21, 2005, the defendant filed a Motion to Suppress and a Preliminary Memorandum in Support of His Motion to Suppress. In his Memorandum, the defendant argued that there was no probable cause to arrest the defendant and, as a result, the fruits (i.e. contraband found in his car during a post-arrest search and post-arrest inculpatory statements) must be suppressed. The defendant's Memorandum did not address investigative detentions pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). The defendant requested a hearing on his motion.

2) On August 2, 2005, the government filed a response to the defendant's Motion to Suppress. In the response,

      the government argued that law enforcement officers had probable cause to arrest the defendant and that his post-arrest, inculpatory statement, made after being properly advised of his <u>Miranda</u> warnings, was properly obtained and should be admitted into evidence.  The government requested a hearing.

3)    On October 28, 2005, the Court allowed the defendant's Motion to Suppress finding the government had failed to meet its burden to demonstrate that "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing a defense."  <u>See</u> Court's Order on Defendant, Michael McDonald's Motion to Suppress, p.2, where the Court quotes <u>United States v. Torres-Maldonado</u>, 14 F.3d 95, 105 (1st Cir.1994)

**ARGUMENT**

Even assuming that law enforcement officers did not have probable cause to arrest the defendant, the cocaine found during the search of the defendant's car and the statements made by the defendant, after being properly advised of his <u>Miranda</u> warnings, were properly obtained and should be allowed into evidence.  The facts known to law enforcement at the time the defendant was removed from his vehicle and placed under "arrest" were

sufficient to give rise to reasonable suspicion that the defendant was engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1 (1968); and United States v. McGuire, 359 F.3d 71, 77 (1st Cir. 2004)(detention valid because police could point to specific and articulable facts and circumstances justifying reasonable suspicion).

Although law enforcement agents may have believed they were placing the defendant under arrest and even articulated that belief to the defendant, the subjective intentions of police are irrelevant to an evaluation of the constitutionality of a detention under the Fourth Amendment. See Whren v. United States, 517 U.S. 806, 811-13 (1996)(allegedly pretextual stop valid because reasonable suspicion objectively existed and subjective motivations of the police are irrelevant); and Bolton v. Taylor, 367 F.3d 5, 8 (1st Cir. 2004).

When law enforcement officers reasonably suspect that a person is engaged in criminal activity, they may stop that person, question that person for a limited period of time, and frisk that person for weapons. See Terry, 392 U.S. at 22-24. In order to justify an investigatory detention, the government must point to specific and articulable facts that, together with rational inferences drawn from those facts, reasonably suggest that criminal activity has occurred or is imminent. See Terry, 392 U.S. at 21. The primary bases for reasonable suspicion are a

police officer's personal observations and the officer's knowledge that a crime has been committed.  Courts recognize that experienced law enforcement officers have the ability to detect criminal activity where others, without police training and experience, would notice nothing suspicious.  Considerable deference is given by courts to the observations and conclusions of police. See Ornelas v. U.S., 517 U.S. 690, 700 (1996)(officer may draw inferences based on experience).

A law enforcement officer who conducts an investigatory detention may conduct a limited pat-down frisk of a suspect's outer clothing, if the officer reasonably believe that the suspect poses a safety risk.  See Terry, 392 U.S. at 27-30.  Law enforcement officers may search an automobile passenger compartment pursuant to Terry, when they reasonably suspect that a detainee removed from the automobile may have concealed a weapon in the automobile.  See Terry, 392 U.S. at 29-30; and Michigan v. Long, 463 U.S. 1032, 1049-50 (1983)(search of automobile passenger compartment did not exceed scope of Terry because limited to areas where weapon could be placed or hidden).

At the time law enforcement officers removed the defendant from his vehicle and detained him, they had reasonable suspicion based on articulable facts that the defendant was involved in criminal conduct.  The officers knew that the defendant had driven Carr to the hotel, waited in the parking lot while Carr

went into the hotel and retrieved a large quantity of cocaine, and was prepared to drive Carr and the cocaine from the hotel parking lot.  Although the defendant's activities might appear innocuous to a lay person, the federal law enforcement officers at the hotel knew, based on their years of training and experience, that it would be highly unlikely for Carr to bring an unknowing and uninvolved person to pick up 989.4 grams of cocaine, worth approximately $20,000.[1]  In other words, the federal officers knew that it is common practice for a drug trafficker to bring someone with him when he picks up a significant load of cocaine.  The role of the second person is to provide back-up support and protection should anything unforseen occur.

   The government respectfully submits that the experienced federal agents had a reasonable belief based on specific and articulable facts and the inferences drawn from those facts that

---

[1] Please see the attached Affidavit of Immigration and Customs Enforcement Special Agent Peter Darling marked as Exhibit A.  In the affidavit, SA Darling details that in almost twenty years of investigating drug trafficking offenses he has learned that drug traffickers often bring a second person to pick-up large quantities of drugs.  The role of the second person is to act as a lookout and otherwise provide assistance if something unforseen occurs, and that it is unusual for a drug trafficker to bring an uninvolved person to a drug pick-up.  SA Darling also notes that drug traffickers frequently carry concealed weapons for self-protection and to safeguard their drugs and money.

   The wholesale value of the nearly one kilogram of cocaine was approximately $20,000.  The street retail value would be significantly more.

the defendant's presence at the cocaine pick-up was indicative of his knowledge and involvement in the drug trafficking activity. The federal agents were justified in conducting a Terry stop and detention of the defendant.

The federal agents were warranted in removing the defendant from his automobile and pat-frisking him to look for weapons.[2] It was reasonable for experienced federal agents to suspect that a person involved in cocaine trafficking would have a weapon to protect himself and the cocaine. The search of the defendant's automobile, which resulted in the seizure of cocaine above a visor in the front seat area, was a permissible extension of the Terry pat-frisk. See Michigan v. Long, 463 U.S. 1032, 1049-50 (1983).

The federal agents were permitted to search the defendant's automobile for weapons. Any contraband found during that search could be seized pursuant to the "plain view" doctrine. Once the agents had lawfully seized the cocaine from the defendant's automobile, they had probable cause to arrest him. Any statement made by the defendant after being properly advised of his Miranda warnings should be admitted into evidence. The United States respectfully requests a hearing on this motion.

---

[2] The government anticipates that at a hearing on the motion the evidence will establish that very shortly after law enforcement officers removed the defendant from his automobile, cocaine was found above the visor in the center of the dashboard area.

**CONCLUSION**

Even if the federal agents lacked probable cause to arrest the defendant, they had reasonable suspicion based on specific and articulable facts and the inferences draw from those facts to conduct a <u>Terry</u> detention of the defendant. The agents were permitted to search the defendant's automobile for weapons because they reasonably concluded that a suspected cocaine trafficker would be in possession of weapons for self-protection and to safeguard the cocaine. The agents discovery of cocaine in the passenger compartment of the defendant's automobile provided them with probable cause to arrest the defendant. The post-arrest statements of the defendant, made after being properly advised of his <u>Miranda</u> warnings, should be admitted into evidence.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

    By: <u>/s/ David G. Tobin</u>
        David G. Tobin
        Assistant U.S. Attorney

**Affidavit of Peter Darling**

I, Peter Darling, on oath depose and state that:

1. I am a Special Agent with the Department of Homeland Security, Customs and Immigration Enforcement ("ICE"), formerly known as the United States Customs Service, and I have been so employed for approximately seven years. Since November 2003, I have been assigned to ICE's field office in Boston. Prior to that, I was assigned to ICE's field office in Chicago, Illinois for approximately five years working narcotics investigations. Prior to that, I worked as an investigator for approximately seven years for the Commonwealth of Massachusetts, Office of the Attorney General. I worked in various sections within the Criminal Bureau, including the Narcotics/Organized Crime Unit. I have received specialized training from ICE in the importation, transportation, and distribution of controlled substances. During the course of my career, I have been involved in numerous narcotics investigations and cases involving a number of investigative techniques, including the debriefing and use of confidential informants, controlled purchases of drugs, electronic surveillance, and physical surveillance. I have also surveiled numerous illegal drug deliveries.

2. Based on my training and experience, I have knowledge of the practices of drug dealers, couriers, and others involved in the importation, transportation, and distribution of illegal drugs. Drug couriers and others responsible to pick-up large

quantities of narcotics often are accompanied by at least one other person. The other individual or individuals frequently are responsible to provide back-up and security if such are required by the circumstances. Such assistance is often necessary because of the dangerous nature of the illegal drug business. The second individual often surveills the area to watch for law enforcement or other signs of potential trouble. The second individual also often provides transportation and remains with the vehicle in case a speedy departure is required.

3.  I have also learned that individuals involved in the transportation and delivery of illegal narcotics typically do not involve individuals who have no knowledge or participation in the criminal activity. The presence of a party without knowledge or participation poses an unacceptable risk to most drug couriers and dealers.

4.   I have also learned that individuals involved in the illegal importation, transportation, and distribution of narcotics often carry weapons to protect themselves, and safeguard their drugs and money derived from the sale of drugs.

Signed under the pains and penalties of purgery on November 3, 2005.

*[signature]*
PETER DARLING
Special Agent, Department
of Homeland Security
Customs and Immigration Enforcement