UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 05-10016-RCL |
| MICHAEL McDONALD | ) ) ) ) | |

**<u>DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO RECONSIDER
ALLOWANCE OF SUPPRESSION MOTION</u>**

ARGUMENT

THE POLICE DID NOT HAVE A REASONABLE, ARTICULABLE SUSPICION TO STOP AND DETAIN MR. MCDONALD.

>  An officer may conduct a brief investigatory stop when he or she has a reasonable, articulable suspicion that criminal activity is afoot. <u>Terry v. Ohio</u>, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); <u>United States v. Romain</u>, 393 F.3d 63, 71 (1st Cir.2004). After a valid Terry stop, a pat-frisk for weapons is also permissible where "the officer is justified in believing that the person is armed and dangerous to the officer or others." <u>Romain</u>, 393 F.3d at 71 (quoting <u>United States v. Schiavo</u>, 29 F.3d 6,8 (1st Cir.1994)); Terry, 392 U.S. at 24, 88 S.Ct. 1868. It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met. To assess the legality of a protective frisk, a court looks at the totality of the circumstances to see whether the officer had a particularized, objective basis for his or her suspicion. <u>United States v. Arvizu</u>, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

<u>United States v. McKoy</u>, 428 F.3d 38, 2005 WL 2850962 (2005) ((no publication pages available).

As stated in Special Agent Darling's testimony, none of the officers ever heard of Mr. McDonald. What they observed was a man matching no description previously told to them, in a car registered to himself, in broad daylight in a hotel parking lot. There

1

was no articulable reason to detain him. The government has made several fanciful arguments regarding the authority of the police to detain Mr. McDonald momentarily in its motion for reconsideration of this Court's Order allowing the motion to suppress evidence and statements.

The government has argued that just because the police believed that they arrested Mr. McDonald and told Mr. McDonald he was under arrest, that those actions and statements did not necessarily affect an arrest. Government's Motion to Reconsider Allowance of Suppression Motion "Gov.Mot."at 3. Citing Whren v. United States, 517 U.S. 806, 811-13 (1996) and Bolton v. Taylor, 367 F.3d 5, 8 (1st Cir. 2004). The government launched an argument suggesting that if the police have a reasonable articulable suspicion to stop an individual pursuant to Terry v. Ohio, 392 U.S. 1 (1968), then even if they arrest him at that moment without probable cause that the warrantless arrest will be found to pass constitutional muster if the authorities later (a) discover evidence through searching or inquiry which provides the basis for probable cause and (b) create a completely different version of events that could have happened but did not. This recharacterization of events cannot salvage an improper arrest.

In Whren v. United States, *supra*, the question presented to the Court was, "whether the temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." Whren, 517 U.S. at 808. In Whren, the officers observed a traffic violation, turning without signaling (after an unusually long wait at a stop sign), and then saw the car

2

hurry off at an unreasonable speed. The police followed and then stopped the vehicle and as the officer approached the car, he saw in plain view, what appeared to be two bags of crack cocaine in the driver's hands. The driver, Whren, sought to suppress the evidence arguing, in essence, that the police would not have enforced the traffic rule but that the officers had a hunch that criminal activity was afoot.

Whren argued that the standard for auto stops should be that no car should be stopped unless a reasonable police officer would have made the stop for the reason given. Therefore, since police often fail to give citations for the civil infraction of failing to signal, that the defendants should not have been stopped even though they failed to signal before turning.

However, that case is inapposite to the instant matter since the officers had probable cause to stop the vehicle and cite it for violating civil traffic rules. Therefore, whether or not the officers would have stopped another car would be a matter for analysis under the Equal Protection Clause. Id. at 813. In the present case, this Court has determined that the officers had no probable cause to arrest Mr. McDonald and the government, citing Whren, does not enhance its position that probable cause existed. Indeed, in Whren, there is no doubt that the officers observed civil traffic violations and had every right and duty to pull over the driver. There were no traffic violations in this case.

In Bolton v. Taylor, 367 F.3d 5 (1st Cir. 2004), police officer Taylor observed a known prostitute alight from Bolton's car. He then claimed that Bolton appeared nervous and sped away with screeching tires. Taylor followed him and pulled him over. The two men became involved in an altercation with each other and several police

officers who arrived at the scene. Bolton was thrown to the ground, struck, and suffered several injuries. Bolton was eventually convicted of assault and battery on a police officer and disturbing the peace. Bolton brought a civil rights lawsuit against Taylor.

One issue which arose was whether the police had a reasonable suspicion to suspect Bolton of criminal activity. Taylor observed Bolton parting from a known prostitute in her usual location, the pair acted suspiciously with the prostitute smiling at the officer and Bolton appearing nervous and leaving quickly. This information provided a minimal amount of evidence to provide Taylor with a reasonable suspicion of criminal activity to affect a Terry stop and nothing more. Id. at 9. However, an altercation ensued resulting in Bolton's arrest; he was not arrested for anything related to the prostitution nor was he cited for speeding. At the time of his arrest, police had probable cause to affect the arrest due to the altercation.

The issue in the instant case presented by the government in its reconsideration motion is whether, hypothetically, the police had a reasonable articulable suspicion to affect a minimally invasive Terry stop and if so whether that can salvage the arrest in the present matter. Assuming, *arguendo*, that the police could have approached McDonald in his vehicle and asked his name and even patted him down for weapons, the authorities would have discovered nothing. He had no weapons on him; his name would not have led to an indication of outstanding warrants. Indeed, this information was known since the authorities traced the license plates of the vehicle. There was no legitimate rationale to ask the driver to alight from the car.

The government cites Michigan v. Long, 463 U.S. 1032, 1049-1050 (1983) for the proposition that law enforcement had the authority to remove McDonald from his car

4

to search for weapons. Gov.Mot. at 4. In <u>Michigan v. Long</u>, *supra*, just after midnight in a rural area, police observed a car driving erratically and at an excessive speed. The officers saw the car swerve off the side of the road and into a ditch. They went to investigate. The only occupant, Long, had alighted from the car and left the driver's side door ajar. Long was not responsive when the officers initially asked for his driver's license. The police twice had to request the license and registration. Long appeared to be under the influence of something, whether alcohol or narcotics. When he went to the open door of the car, police followed and observed a large hunting knife. At that time, the officers stopped Long and performed a pat-down for weapons but found none. One of the officers approached the vehicle looking for weapons and discovered marijuana. The officers determined that the vehicle should be impounded. When they opened the trunk, a significant amount of marijuana was inside. <u>Id.</u> at 1036.

The police, in <u>Long</u>, easily could have arrested Long for driving under the influence; they had ample probable cause for arrest. <u>Id.</u> at 1035 n.1. At that time, the search of the car would not have been a question for Terry-type stops. However, the issue in <u>Long</u> was whether the area not in the immediate access of the detainee could be searched for weapons under <u>Terry v. Ohio</u>, *supra*. The Court examined the principles behind the reasoning for Terry-type stops which permit a momentary detention of an individual without probable cause and without a warrant.

> When the officer has a reasonable belief that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

<u>Michigan v. Long</u>, 463 U.S. at 1046-47 (internal citations and quotation marks

omitted).

In roadside encounters where police reasonably perceive that they are at risk, under certain conditions, law enforcement may be authorized to affect a more thorough pat frisk for weapons or initial search for weapons even without probable cause to arrest. However, under the facts in Long, the police had ample probable cause to arrest and their further search for weapons after observing one weapon and an individual who appeared to be intoxicated was utterly reasonable.

There is no bright line rule in Terry-type stops. However, it appears clear that not every action or activity amounts to reasonable suspicion that criminal activity is afoot. Indeed, in a recent case, McKoy v. United States, 428 F.3d 38 (1st Cir. 2005), police observed a car parked in such a way that it impeded traffic in a high crime area of Boston, a location in which several shootings had recently occurred. The car blocked a disabled ramp and had an improperly placed license plate.

Police approached the car due to the parking violation and license place placement. As they neared the car, the occupant leaned over to the right and appeared nervous. The motion to suppress evidence found on the defendant's person as a result of the pat-frisk which ensued was allowed. The government appealed and the First Circuit ruled that there was insufficient evidence to establish reasonable articulable suspicion to approach and pat-frisk the defendant. The court affirmed the District Court's allowance of the motion to suppress.

> We fully recognize the risk of harm faced by police officers at any traffic stop. However, as the district court stated in its thoughtful opinion, "To

admit the evidence would be a legal determination that if one commits a traffic violation in a high-crime neighborhood he will be subject to a frisk whenever he appears nervous and moves." Terry does not require that determination, and the Fourth Amendment prevents it.

McKoy v. United States, 428 F.3d 38, 2005 WL 2850962 (1st Cir. 2005) (no pagination yet available).

There is even less information available to police in this case than there was in McKoy. In McKoy, the individual was in a high crime area committing a parking violation, impeding traffic and limiting access to disabled persons; further, he acted nervously when approached by police and reached for the center console of the car. In the present case, Mr. McDonald was legally parked in his car. While the authorities knew of every other member of the conspiracy, they had never heard of or had reference about Mr. McDonald. He did not appear nervous or move conspicuously as the police approached and was not afforded the opportunity to provide his name and identification since he was immediately arrested. If there was no reasonable articulable suspicion to approach Mr. McKoy, there certainly was none in the present matter. Therefore, even if the police approached the car, they would not have been warranted in doing more than asking for Mr. McDonald's name. There was no expression of a fear for safety or suspicion of weapons or suggestion of danger.

Unlike the defendant in Long, who had left the vehicle after a roadside accident resulting from erratic behavior and excessive speed, who left the door open with a hunting knife under the seat, the defendant in the present matter sat peaceably in his legally parked car at 9:30 a.m. not arousing the suspicion of danger from anyone in a hotel parking lot not alleged to be a high crime area.

The government argues that at the time the officers detained the defendant, they

knew the following: the defendant had driven Carr to the hotel, the defendant waited in his car in the parking lot while Carr entered the hotel "and retrieved a large quantity of cocaine and was prepared to drive Carr and the cocaine from the hotel parking lot." Gov.Mot. at 5. Actually, what law enforcement knew was that McDonald drove Carr to the hotel and was parked in his car. That is, in fact, all law enforcement "knew". They did not "know" or have reason to know that the defendant was in fact waiting for Carr; they did not "know" or have reason to know that McDonald was, in any way, aware of Carr's activity inside the hotel; they did not "know" or have reason to know that McDonald was prepared to drive Carr anywhere; they did not "know" or have reason to know whether McDonald was aware that cocaine was involved at all.

    This leap from what the officers actually knew to what they assumed or had a "hunch" about establishes all of the further arguments the government makes. Yet, it cannot be substantiated by the facts which include that several names or nicknames were known to the authorities; McDonald was not one of them, McDonald was in his own car and not in any way impeding traffic when he was parked in the hotel parking lot, and the officers knew there were no outstanding warrants for Mr. McDonald. Everything else is specious.

    Law enforcement had no reasonable articulable suspicion to stop and pat-frisk Mr. McDonald, or to search the interior of is vehicle. "Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and affects, against unreasonable searches and seizures.' Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision.

An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren, *supra* at 809-801 (internal citations omitted). This "stop" was, in fact, an arrest without probable cause made in violation of the protections guaranteed by the Fourth Amendment to the United States Constitution and this Court should uphold its previous ruling allowing the motion to suppress.

### EVEN IF THERE WAS A REAONABLE ARTICULABLE SUSPCION TO DETAIN MR. MCDONALD, THE DETENTION EXCEEDED THE SCOPE OF A "TERRY" STOP.

Even if the government could make a cogent argument that, under the circumstances known to law enforcement at the time they approached Mr. McDonald, they had a reasonable articulable suspicion that he was engaged in criminal activity, the scope of a Terry stop, while not precisely defined, is limited. The intrusion must be justified and limited to weapons. Sibron v. New York, 392 U.S. 40, 65 (1968), Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979).

There is absolutely nothing in the record to indicate that any of the several officers feared for their safety. Indeed, given the affidavit of Special Agent Darling, there is no mention of any dangerousness, weaponry, or violence associated with any of the known conspirators. Certainly, there is no evidence that Mr. McDonald, otherwise unknown to the officers and not linked to any criminal activity, was armed and/or dangerous. He did not make any furtive movements and he did not exhibit any suspicious behavior.

Even if the officers had a reasonable articulable suspicion to detain Mr. McDonald momentarily, they did not avail themselves of that minimal constitutional intrusion. The police immediately arrested Mr. McDonald who was otherwise unknown

to the authorities, not in a high crime area, in his fully registered and legally owned vehicle, in daylight hours, in a valid and legal parking spot and not inhibiting traffic in any way. As noted by this Court in its Order dated October 28, 2005 allowing the defendant's motion to suppress, "[t]here was no indication that, at the time of the arrest, McDonald was in a position to see or hear the drug transaction within the hotel, or that he even knew that a drug transaction was taking place." Order at 2. There was no evidence provided by the government at any time that the facts and circumstances in this case amounted to those which would have permitted a detention or pat-frisk of Mr. McDonald or a search of the car without probable cause.

The government's attempt to stretch Michigan v. Long, *supra*, to permit a warrantless search of the car in the instant case strays outside the boundaries of constitutional provisions. In Michigan v. Long, the officers had ample probable cause to arrest the defendant and did not; the detention was characterized as a momentary stop under Terry v. Ohio, *supra*. In the present case, the officers had no probable cause to arrest but did arrest the defendant and now the government seeks to argue that the unconstitutional actions of law enforcement may be reconfigured to fit a completely different mold of a Terry-type stop (which never occurred) and thereby salvage the unconstitutional arrest, an argument more appropriate to the world of Alice in Wonderland than criminal law.

Indeed, despite the caselaw provided by the government into which it has attempted to contort the facts of this case permitting pat-frisks and weapons searches without probable cause to arrest, there is no question from Special Agent Darling's affidavit and testimony that the moment Carr was arrested inside the hotel, McDonald

10

was arrested in his car (Affidavit at p. 5). Law enforcement was not confused, they knew exactly what they were doing. They arrested Mr. McDonald and read him his rights pursuant to Miranda v. Arizona, 396 U.S. 868 (1969) making it quite clear that he was in custody. He was not preliminarily detained and questioned and pat-frisked for weapons. Terry v. Ohio, 392 U.S. 1 (1968). His car was not searched incident to a pat-frisk due to fear for the officers' safety. He was arrested without probable cause in violation of the United States Constitution, Fourth Amendment which is clearly outside the scope of a momentary detention.

CONCLUSION:

Even with the government's new characterization of facts seeking to bootstrap the unconstitutional arrest in this case into valid action by law enforcement, this Court should uphold its ruling and order allowing the defendant's motion to suppress evidence and statements. The authorities did not have a reasonable, articulable suspicion to approach Mr. McDonald; even if they did, they were not in fear for their safety and therefore any weapons search would be well outside the scope of a minimal detention without probable cause to arrest. Therefore, the defendant urges this Court not to disturb its ruling allowing the motion to suppress evidence and statements.

MICHAEL McDONALD
By his attorney,

JOHN M. MOSCARDELLI, BBO #357340
Peters & Moscardelli
Eight Winter Street, 12th Floor
Boston, MA 02108
Tel. (617) 423-6222

DATED:

## Certificate of Service

I, JOHN M. MOSCARDELLI, counsel for the defendant, Michael McDonald, hereby certify that I have this day served a copy of the foregoing motion upon Assistant United States Attorney David G. Tobin of the United States Attorney's Office, United States District Court, One Courthouse Way, Suite 9200, Boston, MA 02210 by mailing the same, postage pre-paid.

_____
JOHN M. MOSCARDELLI