UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 05-10016-RCL |
| MICHAEL McDONALD | ) ) ) ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE UNCHARGED MISCONDUCT, OTHER CRIMES, OR EVIDENCE OF CHARACTER, FED.R.EVID. 404(b) & 403, AND MEMORANDUM IN SUPPORT THEREOF**

**PRELIMINARY**

Defendant Michael McDonald moves to exclude prior bad act testimony by co-defendant Sorrell about Mr. McDonald's alleged prior involvement in Controlled Substances Act violations in approximately September, 2004. This alleged CSA violation is not charged in the pending indictment; the indictment alleges possession with intent to distribute and aiding and abetting on November 24, 2004. (Indictment, Doc. 9.) This Court has already applied the Fourth Amendment exclusionary rule to suppress all the evidence obtained or derived from Mr. McDonald's unlawful November 24, 2004 arrest, search and interrogation. See, Orders October 28, 2005 and January 19, 2006. (Orders, Docs. 36 & 42.) Because most of the government's evidence has been suppressed, the prior bad act (as the government must admit) is the only link in the "inferential chain" that could lead to a conviction. The government concedes that it will not have sufficient evidence to try Mr. McDonald without Sorrell's testimony about the alleged September 2004 uncharged misconduct. Any special relevance the Sorrell testimony

1

may have is, therefore, outweighed by the prejudicial risk of hostile jury reaction created by bad act evidence. The Sorrell testimony cannot overcome the "absolute bar" against unfair prejudice by being specially probative of an issue in the case -- such as intent or knowledge -- without including bad character or propensity as a necessary link in the inferential chain.

## FACTS

A.     Evidence to Exclude

The defense anticipates that the government will offer the testimony of defendant Sorrell that he, Sorrell, was present with Mr. McDonald while participating in a cocaine delivery to co-defendant Nuerel Carr in September 2004.[1]  Sorrell also told agents that Carr allegedly said that he, Carr, supplied cocaine to Mr. McDonald.

Sorrell's proposed testimony about McDonald's September 2004 contact with Carr emerged seven months after his arrest.  Sorrell did not reveal any information whatsoever about Mr. McDonald in connection with Sorrell's November, 2004 arrest and immediate cooperation in the controlled delivery to Carr.  Sorrell had been able to identify two individuals in Jamaica by name and had given a pseudonym ("Cox") and a description of Neurel Carr.  Sorrell gave authorities many other particulars of his drug importation and distribution activity, but none of this information had concerned Mr. McDonald.  In fact, the Government has produced no evidence that Sorrell has even seen McDonald since September, 2004.

Sorrell's first disclosure of information about Mr. McDonald came eight months later in the form of a July 14, 2005 proffer at the United States Attorney's Office in Boston.  This information was not reduced to the form of a report (a DEA-6) until August 16, 2005, some three

---

[1] The defense raises no *Bruton* issues because both Sorrell and Carr have pled guilty.

weeks after defendant filed his motion to suppress. According to the relevant DEA-6, Sorrell would offer the following testimony: that Sorrell had met Mr. McDonald in September, 2004 while Sorrell was staying with Carr (a/k/a Cox); that Carr told Sorrell that he supplied McDonald with cocaine (no further details mentioned); that Sorrell was "present" when Carr and McDonald extracted cocaine from bottles of rum Sorrell had smuggled from Jamaica; that Cox and McDonald took the liquid out of the rum bottles and used a metal object to extract the cocaine.

B.      Arrest of Sorrell at Logan Airport, Cooperation & Controlled Delivery

Sorrell's late-disclosed evidence of character evidence/uncharged misconduct carries a legally unacceptable risk of unfair prejudice with the trial jury. Because most of the government's evidence against McDonald has been suppressed, other than McDonald's mere presence at the hotel parking lot on the night he and Carr were arrested, there exists only Sorrell's testimony about the prior bad acts.

Counsel recites the facts already established in these proceedings. On November 23, 2004, US Customs/ICE caught Donovan Sorrell arriving from Jamaica at Boston Logan airport with about of kilogram of cocaine powder. X-ray screening of Sorrell's baggage revealed contraband hidden in bottles and field-testing confirmed cocaine. Sorrell was arrested and interrogated at the airport and he agreed to help the ICE/DEA/ State Police drug task force make a controlled delivery. Sorrell and task force members went to the planned meeting with co-defendant Nuerel Carr (a/k/a "Cox") at a Best Western Hotel in Quincy, Massachusetts. There, police watched a Nissan "Pathfinder" (later discovered registered to Mr. McDonald) arrive and saw Carr enter the hotel. Carr obtained the cocaine from Sorrell's room under police surveillance and left Sorrell's room. Police arrested Carr and then Mr. McDonald in the hotel parking lot. McDonald had never left his motor vehicle.

C.   Mere Presence and Location

There was no evidence at time of arrest to further connect Mr. McDonald with the drug transaction. As established in the December 7, 2004 detention hearing, arresting and investigating officers had no familiarity at all with McDonald. Sorrell never named or identified a third anticipated participant in the transaction and he did not tell agents to expect that Carr (a/k/a Cox) would have a driver or anyone with him. (December 7, 2004 hearing, Tr. 37-38.) In Sorrell's interrogations with agents about previous and anticipated drug transactions, "it never really came up in the conversations that we had with Sorrell that there was another individual involved." (Tr. 38.) Likewise, the half dozen or more task force agents connected with the November 24, 2004 arrest all had lengthy Boston drug investigation experience. (Tr. 39.) None of these agents recognized Mr. McDonald and none had had any experience with him; he was a "total stranger" to the agents until the day of his arrest. (Tr. 39 & 45.)

D.   Suppression of Evidence

The Court's October 28, 2005 suppression order (Doc. 36) has now limited the government's evidence to McDonald driving Carr to the rendezvous and potentially, Sorrell's statements about uncharged misconduct. On the record of the December 7, 2004 detention hearing, this Court held that Mr. McDonald's

> . . . arrest was not valid, in that there was no probable cause for the arrest. Accordingly, items seized upon the search of the vehicle will be suppressed, because the search of the vehicle was not a search incident to a lawful arrest. The statements made by McDonald following the arrest likewise will be suppressed, because the arrest was not lawful and the statements are the fruit of the unlawful arrest. See *United States v. Fiasconano*, 315 F.3d 28, 34 (1st Cir. 2002) (noting that "[g]enerally, if an arrest is not based on probable cause, then statements and evidence obtained as a result of the arrest are inadmissible."). October 28, 2005 Order granting motion to suppress. (Order, Doc 36, p. 3.)

In denying a government motion to reconsider, this Court found

> The parties agree that, as soon as Carr exited the Best Western Hotel, both he and McDonald were arrested and taken into custody. Defendant's Brief on Motion to Suppress ("Defendant's Brief") at 3 ("After exiting the hotel room, Carr was immediately arrested as was the defendant Michael McDonald"). Gov't. Response at 3 "Carr exited the room carrying the two bottles containing the cocaine, and began walking toward the defendant, who had remained waiting for Carr in his vehicle. At this point, Carr and the defendant were arrested by federal agents. After the defendant was taken into custody, law enforcement agents searched his Nissan Pathfinder. An inventory of the vehicle resulted in the seizure of several packets of cocaine by the Massachusetts State Police.") (emphasis added). Gov't. Response at 6 ("Both [Carr] and [McDonald] were. . . arrested as [Carr] made his way back toward [McDonald's] vehicle."). I infer from these facts that McDonald was fully searched at the time that he was taken into custody, and that the search of his vehicle, as the government acknowledges, took place some time thereafter.

January 19, 2006 order on government's motion to reconsider. (Order, Doc. 42, fn. 1.)

### ARGUMENT

A.  Argument Summary

The government's uncharged misconduct evidence (the Sorrell testimony) does not pass Rule 403's unfair prejudice test. The Sorrell testimony cannot overcome the "absolute bar" by being specially probative of an issue in the case -- such as intent or knowledge -- ***without including bad character or propensity as a necessary link in the inferential chain***. Because most of the government's evidence has been suppressed, the prior bad acts (as the government appears to admit) are the only link in the "inferential chain" to convict Mr. McDonald.

This Circuit has had frequent cause to reverse or admonish the government for misuse of prior bad acts. See, *e.g., United States v. Varoudakis*, 233 F.3d 113, 233 F.3d 113 (1st Cir. 2000)

(discussed, *infra*) (reversing conviction and vacating judgment because admission of prior uncharged arson unfairly prejudicial and not harmless error); *Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995) (discussed, *infra*) (conviction reversed for unfair prejudice where prior conviction for nearly identical conduct was found specially relevant); *Arias-Montoya*, 967 F.2d 708, 710 (1st Cir. 1992) (discussed, *infra*) (finding unfair prejudice and error in admission of prior convictions/bad acts but not reversing because of overwhelming evidence, *e.g.*, possession, flight, inconsistent statements); *United States v. Frankhauser,* 80 F.3d 641, 648 (1st Cir. 1996) (discussed, *infra*) (admonishment for "bad act overkill").  It has also recently denied interlocutory appeals from orders excluding prior bad acts evidence of highly probative uncharged misconduct.  See, *United States v. Gilbert,* 229 F.3d 15 (1st Cir. 2000) (nurse accused of murdering patients by injection, excluding evidence of attempt to murder husband by injection) (discussed, *infra*).

On the state of the record, the only admissible evidence of Mr. McDonald's connection to the crime is that he drove a co-defendant to the drug deal and stayed in the car.  The admission of evidence of involvement in uncharged crimes will inevitably prejudice the jury's consideration of charged conduct.  Even if the prior bad act evidence has "special relevance," it is nonetheless inadmissible if its probative value is "substantially outweighed by the danger of," *inter alia*, "unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403; *Aguilar-Aranceta*, 58 F.3d at 798. "The trial judge . . . must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule." *Frankhauser*, discussed, *infra,* citing *United States v. Arias-Montoya*, 967 F.2d 708 at 714 (1st Cir. 1992).

B.      Contours of "Prior Bad Acts" Law

Evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit crimes of the sort for which he is on trial. When prior bad act evidence is offered to prove a motive for the crime, "courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury." *United States v. Varoudakis*, 233 F.3d 113, 233 F.3d 113 (1st Cir. 2000) (reversing conviction and vacating judgment because admission of prior uncharged arson not harmless error). Rule 404(b) provides in relevant part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . . Fed.R.Evid. 404(b).

To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996). As the text of Rule 404(b) indicates, prior bad act evidence may be specially relevant if, for example, it goes to the defendant's intent, knowledge, plan, absence of mistake, or identity. Probative value "must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged." *Id.,* citing *United States v. Fields*, 871 F.2d 188, 197 (1st Cir.), cert. denied, 493 U.S. 955 (1989). Additionally, prior bad acts may be admitted *in conspiracy cases* under 404(b) if they "explain the background, formation, and development of the illegal relationship." *United States v. Escobar-De Jesus*, 187 F.3d 148, 169 (1st Cir. 1999). Secondly, under Rule 403, even if the bad acts evidence is especially relevant, it may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice exists where

7

there is a danger that a jury may draw an improper inference (once a crook, always a crook) from the prior bad acts instead of focusing on the evidence of the elements of the crime charged. See, e.g., *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (the trial court's ruling on bad act evidence to avoid "likely hostile jury reaction that underlies the common law rule."); *United States v. Frankhauser, supra; United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000); *United States v. Guyon*, 27 F.3d 723, 728-29 (1st Cir. 1994); *United States v. Arias-Montoya,* 967 F.2d 708, 709 (1st Cir. 1992).

The Court of Appeals reviews the admission of prior bad acts evidence under Rules 404(b) and 403 for an abuse of discretion. *United States v. Guyon*, *supra; Aguilar-Aranceta*, 58 F.3d 796 (1st Cir. 1995)(discussed, *inrfa*).

## **UNFAIR PREJUDICE**

A.   Significant Cases in this Circuit

*United States v. Aguilar*

The First Circuit's holding in *Aguilar-Aranceta* stands for the proposition that prior bad acts evidence cannot be used to close the inferential chain for proving the government's case in chief - as it attempts to do in this case. See, *Aguilar-Aranceta*, 58 F.3d 796 (1st Cir. 1995). Bad acts evidence creates unfair prejudice where the government's case is weaker and more circumstantial (like the case at bar); there is heightened danger that the jury will rely on evidence of prior bad acts to infer guilt even though the government has no other evidence of elements of the offense. For example, Mr. McDonald driving Carr to the Quincy hotel could not support an inference of knowledge that Carr was buying drugs in November unless there was prior bad act

8

evidence about Carr buying drugs from Sorrell and supplying drugs to McDonald in the preceding September.

Examining *Aguilar* and comparing it to the case at bar shows that Mr. McDonald presents an even stronger argument than *Aguilar* for the exclusion of prior bad acts. Defendant Aguilar appeared at a United States Post Office to claim two registered packages. *Id.* She examined the return address labels and said "no me (sic) family." The Postal Clerk replied that it was up to her, the defendant, to take the packages or not. The defendant again said "no me (sic) family," and took the two packages. Immediately upon exiting the lobby of the Post Office defendant was detained and placed under arrest. The two packages defendant was carrying had been intercepted by a mail specialist earlier and found to contain approximately 224 grams of cocaine. Aguilar-Aranceta never opened the packages.

After a second trial, a jury convicted Aguilar for possession of cocaine with the intent to distribute and defendant appealed. Under 21 U.S.C. Section(s) 841(a)(1), the government was required to show beyond a reasonable doubt that she knowingly possessed a controlled substance with the intent to distribute. The government had presented evidence of Aguilar's earlier conviction for possession of cocaine. The trial court had admitted this evidence as relevant to the issue of whether defendant was in knowing possession of cocaine when she was arrested at the Post Office because the defendant's behavior - receipt of a mail package from Columbia - had been the same. The defendant had argued that all evidence pertaining to defendant's prior conviction served no other purpose than to demonstrate a propensity for criminal activity and should therefore have been excluded under Federal Rule of Evidence 404(b).

The First Circuit reversed defendant's conviction finding that the prior convictions were especially relevant but that their admission was nonetheless unfairly prejudicial. The court noted

9

it had decided many cases surrounding the admissibility of extrinsic bad act evidence under Rule 404(b). *Aguilar*, supra, citing e.g., *United States v. Guyon*, 27 F.3d 723, 728-29 (1st Cir. 1994); *United States v. Arias-Montoya,* 967 F.2d 708, 709 (1st Cir. 1992). *United States v. Fields*, 871 F.2d 188, 195-99 (1st Cir. 1989); *United States v. Mateos Sanchez*, 864 F.2d 232, 234-38 (1st Cir. 1988); *United States v. Oppon*, 863 F.2d 141, 144-48 (1st Cir. 1988); *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982). The *Aguilar* court explained its two-part test: (1) determine whether the evidence is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question - i.e., whether the evidence has some "special" probative value; and, if specially relevant, then (2) determine under Rule 403 whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice".

<u>United States v. Varoudakis</u>

The First Circuit has reversed on prior bad acts evidence or upheld their exclusion more recently in *Varoudakis* and *Gilbert.* *United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000); *United States v. Gilbert,* 229 F.3d 15 (1st Cir. 2000). The *Varoudakis* court noted that it had focused historically on two factors to determine the *probative value* of prior bad act evidence: "the remoteness in time of the other act and the degree of resemblance to the crime charged." *Varoudakis, supra,* citing *Frankhauser*, 80 F.3d at 648, quoting *United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989). The government had charged Varoudakis with arson and conspiracy to commit arson in violation of 18 U.S.C. §§ 844(i) & 371, by contracting to burn down his restaurant to collect insurance proceeds. Following his conviction, Varoudakis argued on appeal that the district court abused its discretion by admitting testimony of Varoudakis's long-time girlfriend and co-conspirator in the restaurant arson. The girlfriend's testimony was that she saw Varoudakis set fire to his leased car sixteen months before the restaurant fire. In response to a

10

motion *in limine* filed by the defendant to exclude the car fire evidence, the trial court ruled that testimony about the car fire would be admissible to show Varoudakis's "plan, knowledge, and intent" in relation to whether he "knowingly participated in a common scheme to defraud." In support of this rationale, the trial court cited the government's allegations that Varoudakis committed both the car fire and the restaurant arson "for a financial motive" and with one of the "same conspirators, the girlfriend." The *Varoudakis* court reversed the trial court's admission of Rule 404(b)/403 evidence of an uncharged automobile arson sixteen months before the restaurant fire finding that such evidence was unfairly prejudicial and not harmless.

### United States v. Gilbert

In *Gilbert*, the First Circuit upheld the trial court's exclusion of two categories of bad acts evidence in denying a government interlocutory appeal. *United States v. Gilbert,* 229 F.3d 15 (1st Cir. 2000) (nurse murdering chronically ill patients by injection in VA hospital). The type of bad acts evidence offered against Gilbert was detailed evidence of an attempt to murder her husband at the same time and by the same methods she was accused of using on her patients. According to the indictment, Gilbert had killed four Ward C patients, and attempted to kill three others, by intravenously poisoning them with epinephrine injections. (Epinephrine is a clear, odorless liquid used for resuscitating patients in a state of cardiac arrest that causes a fatal rapid or irregular heartbeat when administered in excessive doses.) *Id.*

The government attempted to offer, and the First Circuit upheld exclusion of the following evidence: In the fall of 1995, around the time defendant was administering fatal injections to her patients, defendant came home from work shortly after the aforementioned hospitalization with two syringes, one of which was filled with a clear, odorless liquid, and told her husband that she wanted to take a blood sample back to the VAMC for additional testing (she

11

had allegedly been poisoning her husband to induce an illness). Gilbert told her husband that she would have to inject saline into his arm to flush the vein. Glenn Gilbert's arms and chest became numb when he received the injection and he tried to pull away, but Gilbert pinned him against the wall with her hip and continued the injection. The husband lost consciousness but survived without any outside medical intervention. Gilbert allegedly explained away the incident by informing her husband that he had fainted at the sight of the needle. The government contended that Gilbert actually injected her husband with potassium in hopes of inducing a fatal cardiac arrest.

      The reasoning in *Gilbert* is highly apposite to Mr. McDonald's case. The Sorrell bad acts testimony concerns uncharged conduct and the jury will focus on whether Sorrell's statements about September, 2004 are persuasive and not whether Mr. McDonald was possessing cocaine in November, with intent to distribute it. Likewise, *Gilbert* trial court found and the Court of Appeals agreed that by proving the uncharged conduct, the government would dramatically increase its chances of obtaining a conviction with regard to the charged conduct - not because the evidence of the uncharged crime would be applied on the issues of identity, motive, or specialized knowledge, but because of the inferences of propensity that would inevitably be drawn by the jury. In this evidentiary environment, the court found, the defendant simply could not get a fair trial on the charges that have actually been brought against her. *Gilbert, supra.* The First Circuit reasoned, *inter alia,* that the trial court was rightly concerned about the extent to which the attempt on Glenn Gilbert would be litigated during the course of the trial on other conduct for which the defendant was actually indicted.

*United States v. Frankhauser*

The government may well note that the erroneous admission of prior bad acts does not always lead to reversal. While it is true that an abuse of discretion is subject to harmless error analysis, the First Circuit has cautioned the government and the trial courts to "be wary of 'bad act overkill'. *United States v. Frankhauser*, *infra* (though not a reversal in favor of the defense, the *Frankhauser* court's unwillingness to reverse cannot be read to condone a bad government practice); see, also *United States v. Arias-Montoya*, 967 F.2d 708 (1st Cir. 1992) (discussed, *infra*). The mere fact that an erroneous admission of bad act evidence may escape reversal is poor rationale to argue for its admission.

In *Frankhauser,* defendant was accused of obstructing the investigation of Brockton-area skinhead race crimes by holding himself out under different names as a paralegal in a legal defense organization. The Defendant's prior convictions for obstructing justice in a Lyndon LaRouche case ten years earlier had been admitted for limited purposes over defense objection. Defendant appealed:

> We review a trial court's determination that evidence of prior bad acts is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence for abuse of discretion. *United States v. Guyon,* 27 F.3d 723, 729 (1st Cir. 1994). It is well established that evidence of prior bad acts is inadmissible to show bad character and consequent propensity to commit a crime, but may be admitted to prove, among other things, knowledge, intent, or absence of mistake or accident. Fed.R.Evid. 404(b); see also, e.g., *United States v. Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995); *United States v. Arias-Montoya*, 967 F.2d 708, 709 (1st Cir. 1992). Although logically relevant, "propensity" or "bad character" evidence carries an unacceptable risk that a jury will convict for crimes other than those charged, or that it will convict, although uncertain of guilt, because a bad person deserves punishment. *Arias-Montoya*, 967 F.2d at 709; *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982). Such evidence therefore is inadmissible as a general rule, but may be admissible if it has "special" probative value beyond mere relevance that does not derive from "bad

13

character" or "propensity." *Arias-Montoya*, 967 F.2d at 709; *Moccia*, 681 F.2d at 63.

\* \* \* \* \*

Our most serious concerns rest on the Rule 403 side of the scale. "If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury, and if the baggage's weight substantially overbalances any probative value, then the evidence must be excluded." *Aguilar-Aranceta*, 58 F.3d at 800 (internal quotation marks and citations omitted). The author of this opinion believes that although the LaRouche evidence [defendant's prior conviction] was probative in theory, the use and extent of it "progressed well beyond the necessary," *United States v. Pratt*, 73 F.3d 450, 452 (1st Cir. 1996), and that this raised a threat of confusion and unfair prejudice…. While it behooves us once again to warn the government and the district court against "the folly of bad act overkill," *Arias-Montoya*, 967 F.2d at 714, we all agree that in this case it is "highly probable" that whatever portion of the LaRouche evidence that was unnecessarily admitted "did not contribute to the verdict[s]" on Count I (conspiracy) and Count II (18 U.S.C. Section(s) 1512).

*United States v. Frankhauser*, 80 F.3D 641 (1st Cir. 1996).

## SPECIAL RELEVANCE NOT DEMONSTRATED

A.    Sorrell Testimony Does Not Have Special Relevance

*United States v. Arias*

Mr. McDonald does not mean to concede that the Sorrell prior bad acts testimony has "special relevance" merely because the defense argues first for exclusion on Rule 403 grounds of unfair prejudice. The proposed Sorrell testimony is not stated in the Homeland Security police report with sufficient particularity to say whether it would be probative of Mr. McDonald's knowledge or intent either to aid and abet or to possess with intent to distribute. Sorrell's

14

testimony appears more concerned with an accusation that Mr. McDonald associated with Carr because McDonald used or was addicted to drugs. It does nothing to show that Mr. McDonald was told the purpose of the November 24, 2004 trip to the Quincy Best Western, and the Government has no such evidence.

The Sorrell testimony bears strong similarity in this context to the government's misuse of evidence in the *Arias-Montoya* case. *United States v. Arias-Montoya*, 967 F.2d 708 (1st Cir. 1992). The same cannot be said of the inference relied upon in this case. After quoting extensively from *Moccia*, the court attempted to articulate a permissible basis for admitting Arias-Montoya's past conviction into evidence:

> "The question is . . . [whether] one can infer that a defendant who has a past conviction of drug related crime as in this case is more likely to have cocaine in a package form in his automobile than those -- more likely to have cocaine in that package form in his automobile? It's a close question." This formulation strikes us as wholly propensity-based. It asks, in essence, whether someone having possessed illegal drugs in the past would be more likely to possess with the intent to distribute them at a later time than someone without such a record.
>
> We previously have "'urge[d] the government and the district court to be careful as to the admission of [extrinsic act evidence]'" under Rule 404(b). *Garcia-Rosa*, 876 F.2d at 221 (quoting *United States v. Flores Perez*, 849 F.2d 1, 8 (1st Cir. 1988)). It "'is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the "special" ground for doing so.'" Id. No permissible basis for introducing defendant's prior conviction was stated in this case, and our review of the record and the relevant case law convinces us that none existed.

*United States v. Arias-Montoya*, 967 F.2d 708 (1st Cir. 1992).

<u>United States v. Smith</u>

The courts have often severely limited the introduction of uncharged misconduct to proof of elements of the offense or to disprove defenses raised by the defendant. In *United States v.*

15

*Smith,* the First Circuit denied defendant's unfair prejudice argument on the grounds that the trial court's pairing down of the evidence and its limiting instructions avoided unfair prejudice. *United States v. Smith*, 292 F.3d 90 (1st Cir. 2002).  In *Smith*, the trial court carefully parsed the evidence at the pre-trial hearing and circumscribed the scope of the evidence the government could offer at trial. To allow the government to show defendant's dominion and control over the premises and rebut defendant's evidence that he did not reside in, or control, the place where the firearm was kept, the court limited the evidence to events ten days before the acts alleged in the indictment.  The court also barred witnesses from testifying about defendant's instructions to keep the sink area clean to enable ready access to the drain to flush down drugs in case of a police raid. *Id.*

## **CONCLUSION**

For the reasons set forth above, defendant's motion should be allowed.

>Respectfully submitted,
>The Defendant Michael McDonald
>By his Attorney:
>
> /s./ John M. Moscardelli
>JOHN M. MOSCARDELLI, BBO #357340
>Peters & Moscardelli
>Eight Winter Street, 12th Floor
>Boston, MA  02108
>Tel. 617-423-6222

DATED:  October 5, 2006

Certificate of Service

Counsel certifies he has served Assistant United States Attorney Donald Cabell today with a true copy of this motion through the CM/ECF of this District and that no party requires service by other means.

                                         /s./ John M. Moscardelli
                                         John M. Moscardelli, Esq.