```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
                                        )
UNITED STATES OF AMERICA                )
                                        )
          v.                            )   CR. NO. 05-10016-RCL
                                        )
MICHAEL MCDONALD                        )
                                        )
```

**GOVERNMENT'S TRIAL BRIEF**

The United States of America, by and through the undersigned attorneys, hereby submits this trial brief addressing certain issues that may arise during the trial of this case.

## I. THE CHARGE

The indictment charges that on or about November 24, 2004, the defendant possessed a quantity of cocaine with the intent to distribute it, or aided and abetted another in doing the same, in violation of 21 U.S.C. §841(a)(1), and 18 U.S.C. §2. The government expects to offer the following evidence in support of the charge.

## II. SUMMARY OF THE GOVERNMENT'S CASE

On November 23, 2004, Donovan Sorrell, a Jamaican national, entered the United States via Logan Airport on a Jamaican Airlines flight. Customs agents subsequently conducted intensive inspections on approximately 90% of the flight's passengers. An x-ray of Sorrell's luggage revealed three bottles. Inspection of two of the bottles showed one to be filled with a total of 989.4 grams of cocaine powder.

Sorrell was advised of his <u>Miranda</u> rights and then confessed that he was transporting the drugs on behalf of a Jamaican drug dealer named Winston and was to go to a local hotel, where he would call a man named "Bones," who it turn would send a man named "Cox" to come and retrieve the drugs.  Sorrell admitted that he was to be paid $5,000 for his role.

Sorrell agreed to cooperate with law enforcement officials and went to the Best Western hotel in Quincy to complete the transactions.  Sorrell called "Bones" as per his instructions.  Subsequently, the defendant and Nuerel Carr arrived at the hotel in the defendant's Nissan Pathfinder.  Carr went into the hotel and met Sorrell in Sorrell's room; the defendant waited in the Pathfinder.  Carr retrieved the drugs at issue from Sorrell and then exited the room.  Officials then arrested Carr outside the room, and the defendant in his car.  Testing of the suspected cocaine revealed it to be just under 1,000 grams of cocaine.

### III. <u>LEGAL/EVIDENTIARY ISSUES</u>

The government has provided the defendants with notice of its intention to use certain evidence that arguably constitutes other crimes/other bad acts evidence under Fed. R. Evid. 404(b). The government seeks to introduce through its case-in-chief evidence that Donovan Sorrell traveled to the United States in September and October of 2004 to deliver cocaine to Carr and the defendant.  The evidence would come in the form of the testimony

of Donovan Sorrell, travel records reflecting Donovan Sorrell's flights, and hotel records from the Best Western hotel in Quincy.

More specifically, the government intends to elicit evidence showing that Sorrell was residing in Jamaica as of September of 2004. Around that time, a man he knew as "Bones" asked him to deliver cocaine concealed in juice bottles to two Boston area men that Bones identified as "Cox" and "McDonald." Sorrell agreed.

The first trip took place in September of 2004. Sorrell flew into Logan Airport and took a taxi to the Best Western hotel in Quincy. He did not check in. Rather, and by design, "Cox," later determined to be Nuerel Carr, met Sorrell at the hotel and brought him to Carr's residence in Roxbury, where Sorrell stayed for approximately two weeks. The defendant arrived at Carr's apartment approximately one hour after Sorrell's arrival at that apartment. Among other things, the defendant and Carr split the drugs equally after both commented positively on its high quality. Carr and the defendant "cooked up" some of the cocaine into crack. The defendant packaged some of the crack and stated that he had to leave to distribute the crack to some of his "high end" clients. The defendant did leave, but returned periodically to the apartment to hang out with Carr and to prepare and package more drugs for distribution.

Carr possessed a number of handguns and kept them in the apartment. The defendant and Carr handled the guns often during the time that Sorrell stayed at the apartment.

In October of 2004, Sorrell brought more cocaine from Jamaica to deliver to Carr and the defendant. He took a taxi to the Best Western hotel in Quincy and obtained a room. Subsequently, Carr arrived with the defendant in a Kia brand automobile driven by Carr. While the defendant stayed in the car, Carr met Sorrell in his room and took the drugs from him there. Sorrell then came outside with Carr and greeted the defendant in the Kia.

As the government has argued in its opposition to the defendant's motion *in limine* seeking to exclude this and related evidence, the evidence is admissible under Rule 404(b) because it is highly probative evidence of the defendant's knowledge on November 24, 2004 that Carr was going into the Best Western hotel to meet Sorrell and retrieve more cocaine, and the defendant's specific intent to help the transaction succeed. The government cites to several cases in its opposition supporting the proposition that such evidence is not only routinely admissible, but is especially relevant and probative in cases where, as here, the sole meaningful issue concerns the defendant's knowledge and intent. And, because the defendant's knowledge and intent in driving to the Best Western hotel on November 24, 2004 is likely

to be the critical issue in dispute, evidence establishing his participation in similarly executed drug deals with the same two men is, in comparison, far more probative than prejudicial.

**IV.** **NUMBER OF WITNESSES AND LENGTH OF TRIAL**

The government estimates that it will call approximately 8 to 10 witnesses in its case in chief, and estimates the trial will last approximately one week.

                Respectfully submitted,

                MICHAEL J. SULLIVAN
                United States Attorney

By: /s/Donald L. Cabell
    DONALD L. CABELL
    JEREMY STERNBERG
    Assistant U.S. Attorneys

### Certificate of Service

I do hereby certify that a copy of the foregoing opposition was served upon John Moscardelli by electronic notice on this 25th day of October 2006.

                /s/ Donald L. Cabell
                Donald L. Cabell
                Assistant U.S. Attorney